UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ─────────────────────── x | |
| ELLIOT GREENBERG, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:11-cv-03616-RJS |
| Plaintiff, | CLASS ACTION |
| vs. | |
| YONGYE INTERNATIONAL, INC., et al., | |
| Defendants. | |
| ─────────────────────── | |
| TIMOTHY BUTLER, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:11-cv-03799-RJS |
| Plaintiff, | CLASS ACTION |
| vs. | |
| YONGYE INTERNATIONAL, INC., et al., | |
| Defendants. | |
| ─────────────────────── x | |

MEMORANDUM IN SUPPORT OF THE MOTION OF PATRICIA HORNE, MERTON
HORNE AND SCOTT WHITEHEAD FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

## I.   PRELIMINARY STATEMENT

Presently pending before this Court are at least two-related securities class action lawsuits (the "Actions") brought on behalf of all persons, other than defendants, who acquired the common stock of Yongye International, Inc. ("Yongye" or the "Company") between August 11, 2010 and May 11, 2011, inclusive (the "Class Period"). The Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Class members Patricia Horne, Merton Horne and Scott Whitehead (the "Horne Group") hereby move this Court for an Order to: (i) consolidate the Actions; (ii) appoint the Horne Group as Lead Plaintiff in the Actions under Section 21D of the Exchange Act; and (iii) approve the Horne Group's selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that the Horne Group is the most adequate plaintiff, as defined by the PSLRA. The Horne Group collectively suffered losses of $11,360.65 in connection with its purchases of Yongye common stock. *See* Rosenfeld Decl., Ex. B.[1] To the best of our knowledge, this is the greatest loss sustained by any moving Class member or Class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, the Horne Group, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative Class and that it will fairly and adequately represent the interests of the Class.

---

[1]   References to the "Rosenfeld Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of David A. Rosenfeld, dated July 25, 2011 and submitted herewith.

## II.     FACTUAL BACKGROUND[2]

Yongye engages in the manufacturing, research and development and sale of fulvic acid-based liquid and powder nutrient compounds used in the agriculture industry in the People's Republic of China ("PRC"). The Company manufactures and sells two principal products, which are plant product and animal product.

The complaint charges Yongye and certain of its officers and directors with violations of the Exchange Act. According to the complaint, during the Class Period, defendants issued materially false and misleading statements regarding the Company's business practices and financial results. Specifically, defendants failed to disclose that the Company's financial results were inflated and were inconsistent with Yongye's production capabilities. As a result of defendants' false statements, Yongye stock traded at artificially inflated prices during the Class Period, reaching a high of $9.09 per share on November 8, 2010.

On May 9, 2011, Yongye issued a press release announcing its first quarter 2011 financial results. The Company reported revenue of $50.2 million and net income of $8.4 million, or $0.16 diluted earnings per share ("EPS"). Additionally, the Company reported selling expenses were $7.7 million, a decrease by 990 basis points to $15.3%, attributing the decline in selling expense to the Company's revenues growing faster than its marketing, advertising and promotion expenses.

Then on May 11, 2011, *Seeking Alpha* issued an article entitled "Yongye International's Reported Production:  SEC Filings Raise Red Flags."  The article stated in part:

>       An analysis of the SEC filings of Yongye International, Inc (YONG) shows
> that the company and its joint-venture partner could not have produced, and therefore

---

[2]      These facts are drawn from the allegations in the complaint captioned *Greenberg v. Yongye International, Inc., et al.*, No. 11-cv-03616-RJS.

sold, the reported plant product tonnages given the company's stated manufacturing capacity and shipments.

*       *       *

Table 3 shows the schedule of plant product tonnage shipments and production at full capacity in years 2008, 2009, and the first three quarters of 2010, according to Yongye's disclosures. Even if Yongye's factories were running at full utilization at all times, stated shipments of plant product would have exceeded stated production in 2008 by about 2,000 tons and in the first three quarters of 2010 by about 8,000 tons. Cumulatively, plant product shipments exceeded production by 8,887 tons over the entire period from the beginning of 2008 to the end of Q3 2010.

*       *       *

**Section 5. Q2 2010 flow of plant product**

Yongye produced no more than 2,500 tons of plant product in Q2 2010 per Table 2, yet it shipped 8,342 tons of plant product per Table 5. This is possible only if the beginning finished-goods inventory exceeded the ending finished-goods inventory by 5,842 tons of plant product.

Since the overall gross margin has been 50%-60% (per Table 6) and the animal product has only slightly lower gross margin than the plant product (page 10, 8K/A filed 2010/01/04), cost per ton for the plant product in Q2 2010 must have been about $5,000 (45% of about $11,000 from Table 5). Therefore, the change in finished-goods plant inventory should have been about $29 million {5,842 x $5,000}. Yet Table 6 shows that the difference in finished-goods (plant and animal) inventory is only about $3 million {$39,059,951 - $35,792,520}.

The precise split of plant and animal product in inventories has not been disclosed, but even if the Q2 2010 ending inventory contained two years worth of animal product sales at 40% gross margin, table 1 shows that the animal product would have accounted for just $8 million {(1-40%) x ($6,919,854+$6,577,238)} of the finished-goods inventory, leaving about $28 million for the plant product, or, at most $11 million change from the $39 million beginning inventory. A change of less than $11 million is more than $18 million short of the required $29 million change. Therefore, Q2 2010 reported plant product capacity, shipments, and inventories cannot be reconciled.

On this news, Yongye's stock collapsed to $4.85 per share on May 12, 2011, from $5.19 per share on May 10, 2011.

- 3 -

III.     **ARGUMENT**

A.     **The Actions Should Be Consolidated For All Purposes**

The Actions each assert class claims on behalf of the purchasers of Yongye common stock for alleged violations of the Exchange Act during the Class Period.  The Actions name the same defendants and involve the same factual and legal issues.  They are each brought by investors who purchased Yongye common stock during the Class Period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of Yongye common stock at all relevant times.  Consolidation is appropriate where there are actions involving common questions of law or fact.  *See* Fed. R. Civ. P. 42 (a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  That test is met here and, accordingly, the Actions should be consolidated.

B.     **The Horne Group Should Be Appointed Lead Plaintiff**

1.     **The Procedure Required By the PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Plaintiff in the *Greenberg* action caused the first notice regarding the pendency of the Actions to be published on *Business Wire*, a national, business-oriented newswire service, on May 26, 2011.   *See* Rosenfeld Decl., Ex. A.  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class

may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. The Horne Group Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. The Horne Group Has Complied With the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which Class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on July 25, 2011.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on May 26, 2011, the Horne Group timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

The members of the Horne Group have duly signed and filed certifications stating that they are willing to serve as representative parties on behalf of the Class. *See* Rosenfeld Decl., Ex. C. In addition, the Horne Group has selected and retained competent counsel to represent itself and the Class. *See* Rosenfeld Decl., Ex. D. Accordingly, the Horne Group has satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel, as set forth herein, considered and approved by the Court.

### b. The Horne Group Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Rosenfeld Decl., Ex. C., the Horne Group purchased Yongye common stock in reliance upon the materially false and misleading statements issued by defendants and was injured thereby. In addition, the members of the Horne Group collectively incurred a substantial $11,360.65 loss on their transactions in Yongye common stock. *See* Rosenfeld Decl., Ex. B. The Horne Group thus has a significant financial interest in this case. Therefore, the Horne Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in the Actions and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### c. The Horne Group Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims

or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997). The Horne Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004).

The Horne Group satisfies this requirement because, just like all other Class members, its members: (1) purchased Yongye common stock during the Class Period; (2) purchased Yongye

common stock in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, the Horne Group's claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Horne Group to represent the Class to the existence of any conflicts between the interests of the Horne Group and the members of the Class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, the Horne Group is an adequate representative of the Class. As evidenced by the injuries suffered by the Horne Group, who purchased Yongye common stock at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of the Horne group are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the Horne Group's interests and those of the other members of the Class. Further, the Horne Group has taken significant steps which demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, the Horne Group's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Horne Group *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

C.    **The Court Should Approve the Horne Group's Choice of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent.  In that regard, the Horne Group has selected the law firm of Robbins Geller as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action.  *See* Rosenfeld Decl., Ex. D.  Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

## IV.   CONCLUSION

For all the foregoing reasons, the Horne Group respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint the Horne Group as Lead Plaintiff in the Actions; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED:  July 25, 2011                 ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                      SAMUEL H. RUDMAN
                                      DAVID A. ROSENFELD
                                      MARIO ALBA JR.


                                              */s/ David A. Rosenfeld*
                                      DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
DOUGLAS WILENS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

[Proposed] Lead Counsel for Plaintiffs